IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 15, 2006

## STATE OF TENNESSEE v. ERIC MICHAEL GOLDMAN AKA ERIC FORREST

**Direct Appeal from the Circuit Court for Marshall County
No. 16417      Donald P. Harris, Judge**

---

**No. M2006-00134-CCA-R3-CD - Filed December 29, 2006**

---

The appellant, Eric Michael Goldman aka Eric Forrest, was convicted of driving after being declared a habitual motor vehicle offender (Class E felony) and sentenced to four years in the Department of Correction as a multiple offender. He was also found guilty of driving on a revoked license, tenth offense (Class A misdemeanor), which was merged with the conviction for driving as a habitual motor vehicle offender. On appeal, he contends that: (1) the evidence was insufficient to sustain a conviction for the offense of driving after being declared a habitual motor vehicle offender; and (2) the sentence imposed by the trial court is excessive and contrary to the law. After careful review, we conclude that no reversible error exists and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN, J., and J. S. (STEVE) DANIEL, SR. J., joined.

Donna Leigh, District Public Defender, and Michael J. Collins, Assistant Public Defender, for the appellant, Eric Michael Goldman, aka Eric Forrest.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At trial, the first witness was Trooper Bob Logan of the Tennessee Highway Patrol who testified that the underlying incident occurred on December 18, 2003, in Marshall County, Tennessee. He said he spotted the defendant's car being driven without a license plate about a half mile from the trooper's post. He estimated that he was one hundred yards from the car when he first observed that it was without a license plate. He approached to within two car lengths and

determined the car did not have a drive out tag. He followed the car for two to three blocks until it arrived at a BP gas station and parked at a gas pump. During the time he followed the car, he observed only one person in the car. Trooper Logan parked at the side of the gas station building and observed the defendant in the driver's seat. He saw the defendant exit the car from the driver's side door and recalled seeing the defendant's face clearly, because he estimated the area to be so well lit that it would be ten out of ten on a brightness scale. When the defendant exited the building, the trooper asked him to come to his patrol car. The defendant got into his own vehicle and drove to the trooper's car. The trooper testified that he walked to the defendant's window and asked for the defendant's license and registration, which the defendant could not produce. The defendant told the trooper that his name was "Eric Forrest."

The trooper testified that he checked the defendant's name and date of birth and determined that the defendant's driver's license had been revoked and, further, that he had previously been declared a habitual motor vehicle offender in Maury County. He then arrested the defendant but allowed him to stop by his home to turn off the lights and lock the doors before proceeding to jail.

On cross-examination, Trooper Logan testified that, initially, he could not clearly see who was driving the car but that he was able to see clearly when the defendant drove closer. Again, the trooper said he was about two car lengths behind the defendant when they entered the grounds of the BP station. On redirect, he said that the defendant never told him that someone else was driving the car.

Next, Kenneth W. Birdwell, Director of the Financial Responsibility Division of the Tennessee Department of Safety, testified that his office contains records of habitual motor vehicle offenders and of drivers whose licenses are revoked. He said that the records are kept as part of the state's business records and so that he can testify regarding the records. He testified that, according to their records, Eric Michael Goldman and Eric Forrest is the same person. He said the defendant was declared a habitual motor vehicle offender on October 7, 2002, prior to the date of the underlying incident. He testified that a person declared a habitual motor vehicle offender is ineligible to have their license restored before the expiration of three years. He also testified that the defendant's license was revoked at the time of the incident.

Cathy Kelly, Circuit Court Clerk for Maury County, then testified that her office was responsible for keeping the records and orders for the Circuit Court, including the habitual motor vehicle offender orders. She testified as to the process followed in declaring a person a habitual motor vehicle offender. She said that the defendant failed to appear or contest the habitual motor vehicle offender proceedings and that a default judgment was taken. She said that she knew Eric Michael Goldman and Eric Forrest to be the same person.

The State rested its proof, and the defendant put on no proof in his defense. The trial court conducted a jury out hearing in which the defendant: (1) waived his right to have the jury set his fine; (2) agreed to let the court determine the number of his prior convictions for driving on a revoked license; and (3) testified that he had made the decision not to testify in his own defense. The

jury was then charged and returned a verdict of guilty as to both charges. The trial court merged the driving on a revoked license conviction into the driving while declared a habitual motor vehicle offender conviction.

The trial court later conducted a sentencing hearing where two witnesses testified. The first witness, an employee of the Probation and Parole Department assigned to the Marshall County Circuit Court, testified that the defendant had previously been sentenced to probation or alternative sentencing and that the defendant had violated those prior sentences. She also testified that the defendant had previously been convicted of subsequent offenses while serving a sentence on probation and, further, that he had a pending violation in Maury County General Sessions Court at the time of the sentencing hearing in addition to pending charges occurring after the underlying incident.

The defendant testified that he had prior felony charges which were disposed of through the court on the same day. He testified that his prior convictions were for third degree burglary and petit larceny. He said the burglary occurred at a "junk store" and that the larceny conviction was for stealing from a vending machine. In addition, he was apprehended with burglary tools, drug paraphernalia, and marijuana for resale. He claimed that he was told that the District Attorney haD spoken to the jury during the course of the trial without the judge or defense counsel present, but he refused to reveal the source of this information.

At the conclusion of his testimony, the State recommended the defendant be sentenced to four years incarceration as a Range II offender, to be served at 35%. In support thereof, the State cited that the defendant had previously been on alternative sentencing without success and that he had been charged with other offenses since the time of the underlying arrest. The State asked that the court allow no form of alternative sentencing, including work release. The defendant requests to be sentenced as a Range I standard offender and argues that the State failed to establish that he was a Range II offender.

The trial court found that the defendant had two prior felonies in accordance with the law and determined that he was a Range II offender. The trial court held that the defendant's burglary convictions were of the same course of conduct but that his drug conviction was separate conduct. The trial court enhanced the defendant's sentence citing two factors: (1) the defendant's prior history of criminal convictions in addition to those necessary to establish the range including numerous arrests and convictions for driving on a revoked license, assaults, and drug offenses; and (2) the defendant's previous history of unwillingness to comply with the conditions of his release in the community. The court found no mitigating factors. Accordingly, the trial court sentenced the defendant to four years in the Department of Correction as a Range II standard offender. The defendant filed a motion for new trial, but the motion was overruled by the trial court. This appeal followed.

<u>Analysis</u>

The defendant raises two issues on appeal: (1) the evidence was insufficient to sustain a conviction for the offense of habitual motor vehicle offender; and (2) the sentence imposed by the trial court was excessive and contrary to the law. The State contends that the evidence was sufficient and that the sentence is just.

I. Sufficiency

The defendant contends that the trooper never saw him driving the car and alleges that the trooper only saw the defendant exit the store and walk over to the car. He contends that the testimony at trial was purely speculative as to whether the defendant was driving and claims that the evidence at trial was highly circumstantial and did not carry the required burden of proof. The State contends, and we agree, that the proof in the record supports the finding that a rational trier of fact could convict the defendant for driving after being declared a habitual motor vehicle offender.

At trial, the testimony of Trooper Logan showed that the defendant was driving in Marshall County, Tennessee. The trooper testified that he got a good look at the defendant's face and confirmed that the defendant was the only person in the vehicle. The defendant moved his vehicle next to the trooper's vehicle where it was determined the defendant was a habitual motor vehicle offender whose license had been revoked.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. <u>State v. Brewer</u>, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. <u>State v. Cabbage</u>, 571 S.W2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. <u>Liakas v. State</u>, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. <u>State v. Elkins</u>, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. <u>Id.</u> In <u>State v. Grace</u>, the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

We conclude that the defendant has not met his burden of illustrating that the evidence is insufficient to support the verdict of the trial court.

II. Excessive Sentence

The defendant contends that the trial court erred in imposing a sentence of four years to be served in the Department of Correction. He contends that the offense did not merit a maximum sentence and argues that a lesser sentence would still serve the purpose of the Tennessee Criminal Reform Act. He argues that the trial court erred in determining that his three prior felonies were not a single course of conduct even though they all occurred within twenty-four hours. The State argues that the trial court properly followed the sentencing guidelines and that no error exists.

This court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. T.C.A. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. T.C.A.§ 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210(b), to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses will be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. T.C.A. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its

findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002); see T.C.A. § 40-35-210, Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. T.C.A. § 40-35-210(d); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn.2002).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we had preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Here, the defendant was convicted for driving after being declared a habitual motor vehicle offender, a Class E felony. The trial court determined that the defendant was a Range II offender based on his prior felony convictions. The defendant, in fact, had three prior felony convictions, but the trial court considered two of the prior convictions to be part of a single course of conduct committed within a twenty-four-hour period, in compliance with Tennessee Code Annotated section 40-35-106(b)(4) (2003). The trial court considered the defendant's separate drug possession conviction to be a separate course of conduct despite the fact that it occurred in the same twenty-four-hour period. These separate convictions were enough for the trial court to determine the defendant was a Range II offender.

In his brief, the defendant erroneously relies on the multiple offender statute, T.C.A. § 40-35-106, as it was amended in 2005. The statute defining a defendant as a multiple offender was amended in 2005. The defendant here was properly tried and sentenced under the prior law and, after our review, we find no reversible error exists to disturb the judgment of the trial court. At the time of the underlying offense, convictions for multiple felonies committed as part of a single course of conduct within twenty-four hours were to constitute one conviction for purposes of determining prior convictions as relates to a defendant's sentencing range. See T.C.A. § 40-35-106 (2003). In 2005, the statute was amended to count all convictions that occurred within a twenty-four-hour period as one conviction except for those convictions that involve serious bodily injury, bodily injury, or threatened bodily injury to the victim or victims. T.C.A. § 40-35-106 (2006). After thorough review, we conclude that the trial court properly determined that the defendant's prior convictions were not of a single course of conduct and, accordingly, properly sentenced the defendant as a Range II offender. The defendant's prior convictions for burglary and possession of a controlled substance for resale, though rising from the same arrest, were not linked in any other way and thus were properly considered as separate convictions. Our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record. We affirm the sentence of the trial court.

<u>Conclusion</u>

Based on the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE